IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDRA VIGIL,

    Plaintiff,

v.

STS SYSTEMS INTEGRATION, LLC,

    Defendant.

Case No. 3:18-cv-324

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S PARTIAL MOTION TO DISMISS COUNTS I, II, III, IV, V, VI AND VIII (DOC. #5); DISMISSAL OF THESE COUNTS IS WITHOUT PREJUDICE; PLAINTIFF GRANTED LEAVE TO FILE AN AMENDED COMPLAINT WITHIN 14 DAYS SUBJECT TO THE STRICTURES OF FED. R. CIV. P. 11

---

Plaintiff, Sandra Vigil ("Vigil" or "Plaintiff"), has filed suit against her former employer, Defendant, STS Systems Integration, LLC ("SSI" or "Defendant"). The Complaint alleges sex discrimination in violation of Title VII, 42 U. S. C. § 2000e-2(a)(1) and Ohio Revised Code § 4112.02(A), retaliation in violation of Title VII, § 42 U. S. C. § 2000e–3(a) and Ohio Revised Code §4112.02(I), along with state law claims for breach of contract and defamation.

Defendant has filed a Partial Motion to Dismiss Counts I, II, III, IV, V, VI and VIII, Doc. #5. Plaintiff has filed a Memorandum in Opposition, Doc. #10, and Defendant has filed a Reply, Doc. #14.

For the reasons set forth below, Defendant's motion to dismiss Count I (Sex

Discrimination – Title VII), Count II (Sex Discrimination – O.R.C. § 4112), Count III (Sex Discrimination – Title VII), Count IV (Sex Discrimination – O.R.C. § 4112), Count V (Retaliation – Title VII), VI (Retaliation - O.R.C. § 4112) and Count VIII (Defamation and Defamation Per Se) is sustained.

I. **Allegations of the Complaint**

Vigil is a lesbian female who worked under contracts, known as task orders, entered into between Defendant and the federal government. She first began working for SSI in September 2013. The Complaint alleges that she has was a top employee "doubling her salary within her first year." Doc. #1, PAGEID#2.

On August 5, 2016, John Joyce ("Joyce"), Senior Program Manager at SSI, offered Plaintiff a contract position at Wright Patterson Air Force Base ("WPAFB") in Dayton, Ohio. Plaintiff accepted the offer. The position was contingent upon the award of a task order. The task order was subsequently awarded to SSI and Joyce sent a letter to Ruth Rutledge ("Rutledge"), the Commanding Officer Representative at WPAFB, naming Plaintiff as the employee assigned. The period of performance was September 26, 2016, to September 25, 2018. *Id.,* PAGEID#3.

Vigil began work at WPAFB as a "Subject Matter Expert II" in September 2016. *Id.*

The Complaint alleges that in May 2017, there was a meeting of employees at WPAFB, attended by Joyce, during which "they disclosed Plaintiff's sexual orientation without her permission." *Id.* PAGEID#3. Following this meeting, Joyce

2

and Charles Meyers, Plaintiff's technical supervisor, "isolated Plaintiff by instructing [her] to stay in her area and avoid speaking with her co-workers." *Id.* The Complaint also alleges that "Joyce and other employees interrogated and harassed Plaintiff about her sexual orientation. *Id.* "Joyce characterized Plaintiff's same-sex relationships as coerced and nonconsensual. He told her it was easier to just quit her job than to try to stay on the job." *Id.*

On June 2, 2017, Rutledge sent an email to Joyce. *Id.*, PAGEID#4. According to the Complaint, this email "contained false allegations against Plaintiff made by SSI and other WPAFB employees." *Id.* The email stated that

> Plaintiff had engaged in inappropriate relationships with government employees; assisted a government employee in establishing an outside business; established a reputation of buying gifts for government employees; exhibit[ed] frustration in the workplace; exhibit[ed] disdain for government employees; demanded money in return for gifts purchased; and played a significant role in creating an unprofessional and toxic work environment.

*Id.*

Following this email, Joyce, on June 5, 2017, put Vigil on a performance improvement plan ("PIP"). The Complaint alleges that the PIP was the result of these "false allegations" as well as the result of Vigil's relationship with a woman and not for "any legitimate business reason." *Id.*

Following the PIP, Vigil "sent Joyce a written rebuttal to the false allegations in an attempt to protect her reputation and her job, but Joyce did not pass her response on to the government." *Id.*

In early June 2017, Plaintiff, as she had done previously, wanted to visit her

3

family and sought to work remotely requesting paid leave. SSI, however, denied this request and Plaintiff could only take unpaid leave. *Id.*

On or about July 20, 2017, Vigil's position under the task order was not renewed by the government. Joyce, however, informed her "that SSI was slated to receive a duplicate task order" and that a similar position at a reduced salary was available. *Id.*

A letter of intent, on SSI stationery and contingent upon acceptance of the "duplicate task order," was signed by Vigil on August 28, 2017. Doc. #1-1, PAGEID#12. Before signing, Joyce and Plaintiff discussed this offer, in person and over the phone and, as requested, Plaintiff submitted a resume. Joyce promised to pass it along in support of the task order application. *Id.*, PAGEID#5.

In mid-September, Plaintiff was informed by Joyce that although the government had awarded the task order to SSI, he had not submitted her resume and that she would not be working under the task order. *Id.*

On September 25, 2017, Defendant terminated Plaintiff. *Id.*

Vigil filed a charge of discrimination with the EEOC on September 25, 2017, and was issued a Notice of Right to Sue on June 27, 2018. *Id.*, PAGEID#2.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the

4

... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

III. **Legal Analysis**

A. **Sex Discrimination under Title VII and R.C. § 4112 (Counts I and II); Sex Discrimination under Title VII and R.C. § 4112 for Sexual Orientation (Counts III and IV); Sex Discrimination under Title VII and R.C. § 4112 for Non-conformity with Traditional Female Gender Stereotypes (Counts I and II)**

In Counts I and II of her Complaint, Plaintiff has asserted claims for sex discrimination pursuant to Title VII, 42 U. S. C. 2000e-2(a)(1) and pursuant to Ohio Rev. Code § 4112.02(A). Under Title VII, an employer is prohibited from discharging or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." An unlawful employment practice is established when the plaintiff demonstrates that race, color, religion, sex, or national origin was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U. S. C. § 2000e-2(m).

In addition to alleging a "traditional claim" for discrimination on the basis of sex, Doc. #10, PAGEID#51, Counts I and II also allege sex discrimination under Title VII and state law due to "non[-]conformity with traditional female gender stereotypes." Doc. #1, PAGEID##5 and 6. Counts III and IV of the Complaint allege

6

sex discrimination under Title VII and R.C. § 4112 due to "sexual orientation." Doc. #1, PAGEID#7.

The Court will address each of Plaintiff's claims of sex discrimination under Title VII and R.C. § 4112.[1]

1. **Sex Discrimination under Title VII and R.C. § 4112 and for Non-conformity with Traditional Gender Stereotypes (Counts I and II) and Sex Discrimination under Title VII and R.C. § 4112 for Sexual Orientation (Counts III and IV)**

Plaintiff asserts that "[i]n support of her traditional sex discrimination claims," she has alleged that: "(1) she is a woman; (2) she was fully qualified for her position—in fact, she was a top performer; and (3) Defendant took a series of adverse employment actions against her, ultimately terminating her employment." Doc. #10, PAGEID#51. Vigil further claims that the Complaint alleges both "direct evidence" of discrimination through her PIP, which she contends was gender based, and "circumstantial evidence" because she was "treated differently than similarly situated male employees who were not similarly disciplined for the same alleged workplace issues." *Id.*[2]

---

[1] Because Ohio Rev. Code §§ 4112.02 et seq. utilize the same analytical framework as Title VII discrimination claims, "the federal case law governing Title VII actions is generally applicable to cases involving alleged violations of § 4112." *Williams v. Ford Motor Co.* 187 F.3d 533, 538 (6th Cir.1999) (citations omitted), as cited in *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th 2004). As such, any discussion regarding Title VII is equally applicable to Vigil's state law claims for sex discrimination under § 4112.

[2] By virtue of Vigil's pleading, it is assumed that she is arguing a disparate treatment as opposed to a disparate impact claim. In a sex-based disparate treatment claim, the plaintiff must allege that the employer has a discriminatory motive and treats some employees less favorably than others on the basis of sex. *Hughley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995).

7

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not a pleading requirement. As such, a plaintiff alleging a federal employment-discrimination claim is not required to plead facts establishing a *prima facie* case in order to state a claim for relief. *Id.* at 510. Instead, the Court held that an employment-discrimination plaintiff satisfies her pleading burden by drafting "'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Id.* at 508, citing Fed. Rule Civ. Proc. 8(a)(2).[3] The plaintiff, however, must still satisfy the "plausibility" standard in *Twombly* and *Iqbal* in order to determine if the factual allegations in a complaint support the legal conclusions. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612-613 (dismissal of discrimination claim under the Fair Housing Act affirmed since allegations of complaint did not support plausible inference of intentional discrimination). Although "detailed factual allegations" are not required in the Complaint, there must be sufficient "factual content" so that a court, using its "judicial experience and common sense," can "draw the reasonable inference" *Iqbal*, 556 U.S. at 678, of discrimination. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir.2013)

---

[3] The Sixth Circuit has held that notwithstanding *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Swierkiewicz* remains good law. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir.2012) (district court erred since plaintiff not required to plead a *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss)

(dismissal of Equal Credit Opportunity Act discrimination claim affirmed where plaintiffs alleged a "belief" that a bank had refinanced the loans of "delinquent white borrowers" but failed to identify them).

In this case, Vigil states that Defendant "took a series of adverse employment actions against her, ultimately terminating her employment." Doc. #10, PAGEID#51. Although Plaintiff's assertion may be correct, the only facts pled by her that show SSI's discriminatory motive relate to Vigil's sexual orientation. Specifically, Vigil's Complaint alleges that employees "convened a meeting with Joyce where they disclosed Plaintiff's sexual orientation without her permission," that she was thereafter "isolated" and "instructed to stay in her area and avoid speaking with her coworkers," "interrogated and harassed" about her sexual orientation by Joyce and told that her same-sex relationships were "coerced and nonconsensual." Doc. #1, PAGEID#3. Finally, Vigil was told that it was "easier to just quit her job than to stay on the job." *Id.*

Although Vigil cites the Court to support numerous decisions from other jurisdictions as well as a determination by the EEOC, *Baldwin v. Foxx*, E.E.O.C. Appeal No. 0120133080, 2015 WL 4397641, at *5, 10 (July 15, 2015) (permitting claim for sex discrimination based on sexual orientation under Title VII), the Sixth Circuit has yet to recognize a Title VII claim for sexual orientation. In *Vickers v. Fairfield Med. Cir.*, 453 F.3d 757, 763 (6th Cir. 2006), the Court affirmed the dismissal of a male employee's Title VII sex discrimination claim since the complaint alleged that the plaintiff was discriminated against due to his

association with a homosexual male doctor. While the Court acknowledged that "same-sex harassment is actionable under Title VII under certain circumstances," there were no allegations in *Vickers* that plaintiff's dismissal was due to his appearance or mannerisms on the job. Sexual orientation, according to the Court "is not a prohibited basis for discriminatory acts under Title VII." *Id.* at 762. Similarly, in *Gilbert v. Country Music Ass'n, Inc.* 432 Fed. Appx. 516 (6th Cir. 2011), even though the union member plaintiff was an openly homosexual male who was threatened by co-workers, the Sixth Circuit affirmed a dismissal of his Title VII claim based on sexual orientation. The Court held that because the discrimination was "based on sexual orientation, nothing more," the plaintiff had stated no claim for relief under Title VII. *Id.* at 520.

Based upon the above-cited Sixth Circuit authorities holding that no claim for sex discrimination under Title VII exists based on sexual orientation, Plaintiff has failed to state a claim for relief, as a matter of law, under Title VII for "traditional sex discrimination claims" as alleged in Counts I and II, as well as for any claim based on sexual orientation, as alleged in Counts III and IV.

### 2. Sex Discrimination under Title VII and R.C. § 4112 for Non-conformity with Traditional Female Gender Stereotypes (Counts I and II)

SSI next argues that neither has Vigil pled a Title VII claim based on gender non-conforming characteristics and sex-stereotyping as alleged in Counts I and II. Although Title VII claims based on sexual orientation are not recognized by the Sixth Circuit, claims based on gender non-conforming characteristics that support

a sex-stereotyping claim are a form of "impermissible discrimination" under Title VII. *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004).

In *Smith*, the Court held that the claims of sex stereotyping and gender discrimination were sufficiently pled by a fire department employee with male identity disorder who alleged that as his appearance and mannerisms became more feminine, he was harassed for un-masculine conduct and appearance. The plaintiff alleged that the defendants planned to terminate him because of his transsexualism and its manifestations. *Id.* at 569. In reversing the district court's dismissal of the complaint, the Court held that allegations that the employee was discriminated against based upon his gender non-conforming behavior and appearance were actionable pursuant to Title VII and that "[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination." *Id.* at 575 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-251 (1989)). Sex discrimination occurs when an employer discriminates against women because they do not wear dresses or makeup "because the discrimination would not occur but for the victim's sex." *Id.* at 574. Similarly, "[I]t follows that employers who discriminate against men because they do wear dresses and makeup, or otherwise act femininely, are also engaging in sex discrimination, because the discrimination would not occur but for the victim's sex." *Id.*

Defendant argues, however, that Counts I and II for sex discrimination based on non-conformity with traditional female gender stereotypes must be dismissed since Vigil has "not alleged any non-conformance with any gender

11

stereotype, let alone asserted facts to establish that she was discriminated against for such non-conformance." Doc. #5, PAGEID#22. Merely "claiming that she is a 'lesbian female'" is insufficient. Doc. #5, PAGEID#22.

Vigil, however, contends that she has pleaded sufficient facts in support of her claims of discrimination under federal and state law based on sexual stereotypes. Doc. #10, PAGEID#54.

According to Plaintiff's response, the Complaint alleges "direct evidence— that Defendant's rationale for putting her on the PIP that ultimately led to her termination included gender-based reasons," Doc. #10, PAGEID#51, citing to Doc. #1, PAGEID#4, and "that she was treated differently than similarly situated male employees who were not similarly disciplined for the same alleged workplace issues." Doc. #10, PAGEID#52, citing to Doc. #1, PAGEID##4 and 5. Vigil also claims in her response that she has alleged that Defendant discriminated against her on the basis of several gender non-conforming traits, including but not limited to her sexual orientation. Doc. #10, PAGEID##52 and 53, citing to Doc. #1, PAGEID##4 and 5. She asserts that her Complaint alleges that "Defendant criticized Vigil's job performance in part due to her behavior toward other female employees while at work," Doc. #10, PAGEID#54, citing Doc. #1, PAGEID##3 and 4, and "characterized Vigil's relationships as coerced, as if Vigil was exercising dominion over female employees." *Id.* Plaintiff states that "[T]he Complaint... describes how Vigil was criticized for appearing frustrated, and refers to an email in which Ruth Rutledge discussed 'how [Vigil] talks' as an issue motivating

12

Defendant's decision to put her on a performance improvement plan." Doc. #10, PAGEID#4. Finally, Plaintiff's response claims that

> John Joyce and Rutledge's descriptions of Vigil as domineering, angry, and brash align with the well-established sex stereotyping claim based on a woman's non-conformity with feminine stereotypes of passivity, docility, and politeness-including specific stereotypes of how women should talk. (case citations omitted).

Doc. #10, PAGEID#54.

The Court has reviewed the Complaint and notes that most of the factual allegations cited by Vigil in support of her claims for non-conformity with traditional gender stereotypes were not pled. Even assuming, however, that the factual allegations were in the Complaint, these allegations do not establish, with the possible exception of the non-existent one that Vigil was described as "domineering, angry, and brash," a claim for "sex stereotyping—that is, discrimination because she failed to act like a woman."[4] *Smith v. City of Salem*, 378 F.3d at 571. *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (jury verdict affirmed in favor of demoted transsexual police officer who was told he was "not masculine enough" and needed to "stop wearing make-up"); *Equal Employment Opportunity Commission v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 569 (6th Cir. 2018) (EEOC entitled to bring Title VII claim against

---

[4] For example, there is no reference in the Complaint that "Defendant criticized Vigil's job performance in part due to her behavior toward other female employees while at work" or that how "she talks [was] an issue motivating Defendant's decision put her on a" PIP. Finally, nowhere in the Complaint is it alleged that anyone, much less Joyce and Rutledge, ever described Plaintiff as "domineering, angry, and brash."

13

employer who fired transgender and transitioning employee because "he was no longer going to represent himself as a man" and "wanted to dress as a woman.")

Although gender non-conforming characteristics and sex-stereotyping is a recognized claim of Title VII sex discrimination, Vigil alleges no facts in support of such a claim in her Complaint. Accordingly, Counts I and II, as pled, fail to state a claim as a matter of law.

### 3. Retaliation (Counts V and VI).

SSI next argues that Plaintiff's federal and state law claims of retaliation in Count V, pursuant to Title VII, and Count VI, pursuant to R.C. § 4112.02(I) should be dismissed. Under Title VII, an employer is prohibited from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C, § 2000e-3(a). *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting § 2000e-3(a)). As such, "Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct." *Thompson v North American Stainless, LP*, 562 U.S. 170, 173 (2011). Similarly, Ohio law provides that it is unlawful for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice." R.C. § 4112.02(I)."

To establish a *prima facie* case of retaliation under either federal or Ohio law, a plaintiff must show that "(1) she engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the

14

defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Blizzard v Marion Technical College*, 698 F.3d 275, 288 (6th Cir. 2012) (citations omitted).

Defendant asserts that Vigil has failed to state a claim of retaliation because she has alleged no facts that establish that she engaged in any "protected activity." Protected activity requires a plaintiff to prove that she took an "'overt stand against suspected illegal discriminatory action.'" *Id.* at 288. In other words, an employee "'may not invoke the protections of the Act by making a vague charge of discrimination.'" *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir.2007) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989) (holding that complaints about "ethnocism" were too vague to constitute protected activity)). Vigil contends, however, that she

> engaged in protected activity by opposing Defendant's sex-stereotyping in its assessment of her job performance; objecting to Defendant's characterization of her relationships with same-sex employees (i.e. opposition to gender-based disparate treatment); and by opposing Defendant's characterization of her attitude, which had been cast in terms of gender-based norms.

Doc. #10, PAGEID#58 citing Doc. #1, PAGEID#4

Vigil's Complaint, however, fails to allege any facts in support of this alleged protected activity. Although the Complaint references Vigil's "written rebuttal to the false allegations," Doc. #1, PAGEID#4, there is no information in the Complaint as to its contents. Vigil "cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint... [I]nstead,

15

the sufficiency of a complaint turns on its 'factual content.'" *Flagstar Bank,* 727

F.3d 504, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009). Accordingly, Plaintiff

has failed to state a claim for retaliation.

### 4. Defamation and Defamation Per Se (Count VIII)

In Count VIII of the Complaint, Vigil alleges a cause of action for defamation

and defamation *per se*. According to the Complaint, the alleged defamatory

statement was an email authored by Rutledge, "the relevant Commanding Officer

Representative" and government employee at WPAFB. Doc. #1, PAGEID#3. The

email, according to the Complaint, "contained false allegations against Plaintiff

made by SSI and other WPAFB employees" regarding Plaintiff. *Id*, PAGEID#4. The

email was allegedly sent by Rutledge on June 2, 2017. *Id.*

There are two kinds of defamation: "defamation per se," which is material

that is defamatory on its face, and "defamation per quod," which occurs when

material is defamatory through interpretation or innuendo. *Gosden v. Louis,* 116

Ohio App. 3d 195 (Summit Cty. 1996). Regardless of the type of defamation,

however, in Ohio, written defamation, or libel, must be filed "within one year after

the cause of action accrues." R.C. 2305.11 (A). The date of accrual is the date the

statements were made. *Singh v. ABA Publ. ABA*, No. 02AP-1125, 2003 WL

21027897, at *3 (Ohio Ct. App. 10th Dist. May 8, 2003)).

Because Plaintiff's Complaint alleges that defamation occurred on June 2,

2017, and the Complaint, according to the docket of this Court, was not filed until

September 25, 2018, Vigil's defamation claim is time-barred. Accordingly, SSI's motion to dismiss as to Count VIII is sustained.

IV. **Conclusion**

For all the foregoing reasons, Defendant's Partial Motion to Dismiss Counts I, II, III, IV, V, VI and VIII of Plaintiff's Complaint, Doc. #5, is SUSTAINED. The dismissal of Counts I, II, III, IV, V, VI and VIII is without prejudice. At this point in time, only Plaintiff's breach of contract claim (Count VII) remains. Plaintiff is granted leave to file an amended complaint within 14 days subject to the strictures of Fed. R. Civ. P. 11.[5]

Date: September 25, 2019

*(signature)*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff is encouraged to refile her claim for discrimination on the basis of sexual preference given the fact that the United States Supreme Court has accepted certiorari on three Title VII cases raising this very issue. *Bostock v. Clayton County, Georgia*, 723 Fed. Appx. 964 (11th Cir. 2018), *cert granted*, 139 S.Ct. 1599 (April 22, 2019) (No. 17-1618); *Altitude Express, Inc. v. Zarda*, 883 F.3d 100 (2nd Cir. 2018), cert granted, 139 S.Ct. 1599 (April 22, 2019) (No. 17-1623); *EEOC v. R.G. & G.R. Harris Funeral Homes*, 884 F.3d 560 (6th Cir. 2018), cert granted, 139 S.Ct. 1599 (April 22, 2019) (No. 18-107) Plaintiff should refile these claims in the amended complaint in order to preserve them should the Supreme Court rule contra to existing Sixth Circuit authority.